UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERTICAL BRIDGE DEVELOPMENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BRAWLEY CITY COUNCIL and THE CITY OF BRAWLEY, CALIFORNIA, and DOES 1 through 5, inclusive, <br><br> Defendants. | Case No.:  21-cv-02153-AJB-LR <br><br> **ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEYS' FEES** <br><br> **(Doc. No. 98)** |

Before the Court is Brawley City Council and the City of Brawley, California's (collectively, "Defendants") motion for attorneys' fees. (Doc. No. 98.) Vertical Bridge Development, LLC's ("Plaintiff" or "Vertical Bridge") filed an opposition, to which Defendants replied. (Doc. Nos. 106, 110.) For the reasons set forth below, the Court **DENIES** the motion.

## I.   BACKGROUND

Vertical Bridge constructs, operates, and manages telecommunication infrastructure across the United States. A wireless communications provider commissioned Vertical Bridge to construct a cell tower in the City of Brawley ("City"). The Brawley City Council

1

("City Council") authorized the City to enter into a lease agreement with Vertical Bridge concerning Wiest Field Park ("Park"), and the City subsequently executed an "Option and Lease Agreement" ("Option Agreement") providing Vertical Bridge the exclusive option to lease the Park. Based on its communications with city staff, Vertical Bridge understood the project would undergo an administrative approval process.

A few months later, Brawley residents began to express opposition to the proposed cell tower project and demanded the City hold a public hearing on Vertical Bridge's conditional use permit ("CUP") application. Rather than go through the administrative approval process, the City directed Vertical Bridge to submit a CUP application to the Planning Commission. After hearing comments and considering evidence presented by Vertical Bridge and community members, the City Council voted 5-0 to deny Vertical Bridge's CUP application and issued a written denial with its findings.

On December 31, 2021, Plaintiff filed a Complaint against Defendants alleging five causes of actions—three federal claims and two state law claims. (Doc. No. 1.) Specifically, Plaintiff alleged federal claims under the Telecommunications Act of 1996 ("TCA") for Lack of Substantial Evidence (Count I), Discrimination Between Providers of Equivalent Services (Count II), and Declaratory Relief under 28 U.S.C. §§ 2201-2202 (Count III), and state law claims for Breach of Contract (Count IV) and Breach of Duty of Good Faith and Fair Dealing (Count V). (*Id.*)

During an Early Neutral Evaluation and Case Management Conference, the parties agreed, in consultation with the Magistrate Judge, to proceed with litigating the federal TCA claims before proceeding with the state law contract claims. To that end, the parties filed cross-motions for partial summary judgment on the TCA claims (Counts I, II, and III). (Doc. Nos. 50, 65.) The Court granted summary judgment on the federal claims in favor of Defendants. (Doc. No. 78.)

//

//

//

2

21-cv-02153-AJB-LR

Plaintiff thereafter filed a motion to voluntarily dismiss the state law contract claims with prejudice,[1] which Defendants did not oppose so long as they could later file a motion for attorneys' fees and costs. (Doc. Nos. 89, 92.) The Court granted Plaintiff's motion to voluntarily dismiss the state law contract claims, and there being no remaining claims in the action, directed the Clerk of Court to enter judgment accordingly. (Doc. Nos. 96, 97.) The instant motion for attorneys' fees followed.

## II.   LEGAL STANDARD

As a general rule, "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975); *see MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999) ("each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award"). Relevant here, California Code of Civil Procedure Section 1021 provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." To determine whether a party is entitled to attorneys' fees pursuant to Section 1021, the court applies ordinary principles of contract interpretation to decide whether the parties entered an agreement for the payment of attorneys' fees, and if so, the scope of the attorney fee agreement. *See Maynard v. BTI Grp., Inc.*, 157 Cal. Rptr. 3d 148, 151 (Ct. App. 2013); *Cardinal v. Lupo*, No. 18-cv-00272-JCS, 2020 WL 3101025, at *3 (N.D. Cal. June 11, 2020) (citing *Gil v. Mansano*, 17 Cal. Rptr. 3d 420, 422–24 (Ct. App. 2004)).

---

[1] Plaintiff initially filed a motion to voluntarily dismiss the state contract claims without prejudice (Doc. No. 79), which the Court granted conditioned on Plaintiff paying Defendants' costs for expenses incurred to defend against the state claims (Doc. No. 88). *See Lau v. Glendora Unified Sch. Dist.*, 792 F.2d 929, 930 (9th Cir. 1986) ("Federal Rule of Civil Procedure 41(a)(2) provides that, after the defendant has filed an answer or motion for summary judgment, 'an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.'"). In lieu of satisfying the condition, however, Plaintiff filed a motion to dismiss with prejudice its contract claims. (Doc. No. 89); *see Lau*, 792 F.2d at 930 (Rule 41(a)(2) "grants to the plaintiff the option to refuse the voluntary dismissal if the conditions imposed are too onerous.").

21-cv-02153-AJB-LR

## III.   DISCUSSION

Defendants seek to recover attorneys' fees in the amount of $217,200, arguing that they are entitled to attorneys' fees for the entire action under the parties' Option Agreement; (2) Plaintiff should be judicially estopped from arguing that the attorneys' fees provision does not apply to the TCA claims; and (3) Plaintiff should be judicially estopped from arguing that Defendants are not entitled to attorneys' fees on the voluntarily dismissed contract claims.[2]

As more fully explained below, the Court disagrees with Defendants that the parties' Option Agreement entitles them to an award of attorneys' fees in this action. And there being no basis for attorneys' fees in the first instance, the Court need not reach Defendants' judicial estoppel arguments and reject them as moot.

Here, the parties' Option Agreement states, in pertinent part:

> **ATTORNEYS' FEES**. If there is any legal proceeding between Landlord and Tenant arising from or based on this Agreement, the unsuccessful party to such action or proceeding shall pay to the prevailing party all costs and expenses, including reasonable attorneys' fees and disbursements, incurred by such prevailing party in such action or proceeding[.]

(Doc. No. 1-4 at 8.) As an initial matter, the Court finds that the only claims for which Defendants are the prevailing parties in this case are the federal TCA claims. Under California law, Defendants are not prevailing parties on the contract claims because they were voluntarily dismissed. *See* Cal. Civ. Code § 1717(b)(2) ("Where an action has been voluntarily dismissed . . . , there shall be no prevailing party for purposes of this section."). As such, the inquiry before the Court is whether the language of the parties' Option Agreement entitles Defendants to an award of attorneys' fees for prevailing on the TCA claims in this case.

Here, the fees provision at issue states that it applies to any legal proceeding "arising from or based on this Agreement." (Doc. No. 1-4 at 8.) The Court thus considers whether

---

[2] There is no dispute that attorneys' fees are unavailable under the TCA in this case.

Plaintiff's federal TCA claims arose from or were based on the parties' Option Agreement. The contract does not define these terms, nor is there any indication that the parties intended to use them in a technical sense or offer them special meaning. As such, the clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, controls judicial interpretation. *See Santisas v. Goodin*, 951 P.2d 399, 405 (Cal. 1998). And "if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." *Id.*

Interpreting the terms "arising from" and "based on" in their ordinary and popular sense, the Court finds that Plaintiff's TCA claims do not arise from, nor are they based on, the parties' Option Agreement. The meaning a layperson would ascribe to these terms would require that the TCA claims result or originate from, or be founded in, the Option Agreement.[3] That is not the case here. The TCA claims did not result or originate from, nor were they founded on, the contract. Plaintiff had an independent, federal statutory right to bring a TCA suit regardless of the Option Agreement. This is because the occurrence giving rise to the TCA claims (or on which they were based,) was not the lease agreement, but rather, Defendants' decision to deny the CUP application. Indeed, the allegations in Plaintiff's Complaint make clear that the impetus for this suit was Defendants' "improper and arbitrary denial of Vertical Bridge's application to construct a wireless communications tower" which, in its view, violated the TCA because it was "not based on substantial evidence" and "unreasonably discriminated against providers of functionally equivalent services." (Doc. No. 1 at 1.)

The cases on which Defendants rely for a broader interpretation of "arising from" and "based on" are not determinative here. For example, in *Xuereb v. Marcus & Millichap, Inc.*, 5 Cal. Rptr. 2d 154 (Ct. App. 1992), the plaintiff sued the defendants for negligence, products liability, fraud and misrepresentation, and breach of contract because the

---

[3] *See* Black's Law Dictionary (12th ed. 2024) (defining arise); Merriam-Webster, https://www.merriam-webster.com/dictionary/base (last accessed 2024) (defining base).

21-cv-02153-AJB-LR

defendants had allegedly delivered the property that plaintiff purchased from them in defective condition. *See id.* The question before the *Xuereb* court was whether the parties' purchase agreement which included a provision that provided for attorneys' fees "[i]f this Agreement gives rise to a lawsuit or other legal proceeding[,]" covered both the contract and tort claims raised. *Id.* As the court noted, "[t]he critical question, under the language of the parties' attorney fees agreement, is whether [the] lawsuit arose from the Purchase Agreement." *Id.* There, the court found that the various tort causes of action "must be said to have arisen from the Purchase Agreement. None of them was quite independent of the basic contractual arrangement; they arose from the underlying transactional relationship between the parties, as memorialized by the Purchase Agreement." *Id.* (internal quotation marks omitted).

The same is not true in this case. Defendants' obligations under the TCA to provide substantial evidence for its CUP denial and not discriminate are not triggered by any express or implied term in the Option Agreement, but rather, by their decision to deny the permit.[4] *Xuereb* is also distinguishable because there, it was "clear that but for the Purchase Agreement by which the allegedly defective property was sold to [the plaintiff], the dispute between the parties would not have arisen." *Id.* Here, but for Defendants' denial of the CUP, the dispute between the parties would not have arisen. That Plaintiff attempted to use the Option Agreement to prove that the denial was not based on substantial evidence is of no moment.

The outcome in *Maynard* (the other case on which Defendants rely) is also not controlling. *See* 157 Cal. Rptr. 3d at 154. That case did not turn on the interpretation of the phrase "arise" in the parties' agreement, but rather, the interpretation of "any dispute" and

---

[4] The TCA requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). "The party seeking to overturn the local government's decision carries the burden of showing the decision was not supported by substantial evidence." *New Cingular Wireless PCS, LLC v. Cnty. of Marin, California*, No. 20-cv-07915-SI, 2021 WL 5407509, at *6 (N.D. Cal. Nov. 18, 2021).

21-cv-02153-AJB-LR

"prevailing party." *See id.* at 154–55 (holding that "an attorney fee provision awarding fees based on the outcome of 'any dispute' encompasses all claims, whether in contract, tort or otherwise" and that plaintiff was the prevailing party because she "obtained a net recovery in the action"). Because the dispositive analysis in *Maynard* is different from that necessary to undertake here, the Court finds the case inapposite.

Based on the foregoing, the Court find that this legal proceeding arose from and was based on Defendants' denial of Plaintiff's CUP application—not the Option Agreement. Thus, the fee provision in the parties' contract does not provide a basis for awarding Defendants attorneys' fees for prevailing on the TCA claims in this case.

## IV.   CONCLUSION

Accordingly, for the reasons stated herein, the Court **DENIES** Defendants' motion for attorneys' fees. (Doc. No. 98.)

**IT IS SO ORDERED**.

Dated:  July 22, 2024

Hon. Anthony J. Battaglia
United States District Judge

21-cv-02153-AJB-LR